Richard L. MITCHELL, Jr.,
Plaintiff-Appellant,

v.

OFFICE OF the LOS ANGELES COUNTY SUPERINTENDENT OF SCHOOLS; Richard M. Clowes, Stuart E. Gothold, Jack E. Killian, James W. Lee, William W. Snider, John E. Young and Joseph L. Alarid, Defendants-Appellees.

No. 84–6058.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 1986.

Decided Dec. 2, 1986.

Richard L. Mitchell, Jr., pro per.

Tom A. Jerman, O'Melveny & Myers, Los Angeles, Cal., for defendants-appellees.

Before REINHARDT and HALL, Circuit Judges, and MUECKE,* District Judge.

REINHARDT, Circuit Judge:

Plaintiff Richard Mitchell appeals the district court's dismissal pursuant to Fed.R. Civ.P. 41(b) of his employment discrimination action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*, against the Office of the Los Angeles County Superintendent of Schools and several of its employees. Mitchell also appeals the district court's award of attorney's fees to the defendants in the amount of $72,933.75. We affirm the dismissal but reverse the award of attorney's fees.

## OVERVIEW

Dr. Richard Mitchell, a black male, brought this action against the Office of the Los Angeles County Superintendent of Schools ("Superintendent") and seven of its present or former employees after having been rejected for more than thirty positions in the school system. Mitchell possesses advanced degrees in education including a doctorate in education from the Claremont Graduate School. Between 1972 and 1982, Mitchell applied for and was denied various positions available through the Superintendent's office. Mitchell filed charges of employment discrimination based upon his race with the Equal Employment Opportunity Commission ("EEOC") in November 1975 and later filed similar charges with the California Fair Employment Practices Commission ("FEPC"). Although the successor organization to the FEPC did not find sufficient evidence to support the charge of discrimination by the Superintendent, the EEOC issued a "probable cause" determination in September 1980. After its efforts at reconciliation failed, the EEOC issued a right-to-sue letter in February 1981. Mitchell filed the present action that May. Discovery proceedings ensued. The Superintendent was represented by a private law firm and Mitchell represented himself. The trial took place in May 1984. After two and one-half days of Mitchell's presentation of his case-in-chief, including cross-examination by attorneys for the Superintendent, the district court granted a motion for involuntary dismissal pursuant to Fed.R.Civ.P. 41(b). The defendants later filed a motion for attorney's fees on the grounds that Mitchell's action was frivolous and litigated in bad faith within the meaning of 42 U.S.C. §§ 1988 and 2000e–5(k). On June 18, 1984, the district court granted defendant's request, awarding $72,993.75 in fees to the Superintendent.

## INVOLUNTARY DISMISSAL OF TITLE VII CLAIM

We do not overturn a district court's finding on factual issues resulting in an involuntary dismissal under Fed.R. Civ.P. 41(b) unless the findings are clearly erroneous. *Maykuth v. Adolph Coors Co.*, 690 F.2d 689, 695 (9th Cir.1982). Here, because a finding of intent to discriminate is a question of fact, the clearly erroneous

---

* Honorable C.A. Muecke, Senior United States District Judge for the District of Arizona, sitting by designation.

standard applies on review. We may overturn findings under Title VII only if we are " 'left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

In order to establish a prima facie claim of race discrimination under Title VII, a plaintiff must show that (1) he belongs to a racial minority; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) he had been rejected for that position despite his qualifications; and (4) after rejecting the applicant, the employer nonetheless continued to seek applications from people with similar qualifications to that of the plaintiff for the position which remained open. *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Alternatively, the plaintiff may establish his prima facie case by "offering evidence adequate to create an inference that an employment decision was based on a discriminatory criteria illegal under the Act." *Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977) (fn. omitted). Once the prima facie case is established, the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for plaintiff's rejection. If the defendant successfully articulates such a reason, the plaintiff must in turn provide evidence that the reason given was "a pretext or discriminatory in its application." *McDonnell Douglas*, 411 U.S. at 807, 93 S.Ct. at 1827. The plaintiff carries the burden of persuasion throughout the proceedings.

In this case, after Mitchell completed the presentation of his case-in-chief, defendants moved for involuntary dismissal under Fed. R.Civ.P. 41(b). According to Rule 41(b): "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant ... may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." We

have previously upheld involuntary dismissals in Title VII actions. *See e.g., Correa v. Nampa School District*, 645 F.2d 814 (9th Cir.1981). In *Correa*, we stated:

> We conclude that even if [plaintiff] is considered to have met her initial burden under *McDonnell Douglas*, the [defendant] presented sufficient evidence in the form of affidavits, depositions and cross-examination of [plaintiff's] witnesses to establish a reasonable, non-discriminatory reason for her discharge....

645 F.2d at 816. Even where it is possible that we might have weighed the evidence differently from that of the district court judge, and such is not the case here, we will not reverse the lower court's finding if its "account of the evidence is plausible in light of the record viewed in its entirety." *Anderson v. Bessemer City*, 105 S.Ct. at 1512.

■ The district court found that in each case in which another applicant was hired instead of Dr. Mitchell, the person who successfully applied was better qualified than the plaintiff. Moreover, at the "paper screening" level, the committees that reviewed Mitchell's applications and determined that he was not one of the more qualified candidates did not (with the exception of one person after August 1974) know of his race. The district court also found that at all times relevant to Dr. Mitchell's case, the Superintendent had employed a percentage of blacks above that of the relevant labor market. Mitchell did not offer compelling evidence that the Superintendent's reasons for rejecting his applications were pretextual or discriminatory in their application. Thus, the district court's granting of the motion involuntarily dismissing Mitchell's action cannot be said to have been clearly erroneous and is affirmed.

## AWARD OF ATTORNEY'S FEES

A district court's award of attorney's fees is generally reviewed according to an abuse of discretion standard. *Jones v. Giles*, 741 F.2d 245, 250 (9th Cir.1984). Dr.

Mitchell contends that the district court abused its discretion in awarding attorney's fees to the Superintendent. We agree, and reverse the district court award of attorney's fees in the amount of $72,993.75.

The "American rule" is that in the absence of legislation providing otherwise litigants must pay their own attorney's fees. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, Congress in enacting Title VII provided for the award of attorney's fees to the prevailing party in the district court's discretion. 42 U.S.C. 2000e–5(k). Parallel provisions are included in 42 U.S.C. § 1988 for cases brought under Title VI and sections 1981 and 1983.

In *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court clarified the relevant standards for the award of fees to prevailing parties in Title VII actions. The Court distinguished between the award of fees to plaintiffs and defendants arguing that there were at least two "strong equitable considerations" in awarding fees to plaintiffs that are "wholly absent in the case of a prevailing Title VII defendant." *Id.* at 418, 98 S.Ct. at 699. First, the plaintiff is the "chosen instrument of Congress" for vindication of Congressional policy and second, in such a case, fees are awarded "against a violator of federal law." *Id.* at 418, 98 S.Ct. at 699. The provision was designed to "make it easier for a plaintiff of limited means to bring a meritorious suit." Remarks of Senator Humphrey, 110 Cong.Rec. 12724 (1964) in *id.* at 420, 98 S.Ct. at 699. Moreover, as the *Christianburg* court noted, because § 706(k) of the act, codified at 42 U.S.C. 2000e–5(k), "allows fee awards only to *prevailing* private plaintiffs [this] should assure that this statutory provision will not in itself operate as an incentive to the bringing of claims that have little chance of success." 434 U.S. at 422, 98 S.Ct. at 701 (fn. omitted) (emphasis in original).

A defendant stands in a different equitable position from that of a prevailing plaintiff. Nevertheless, Congress intended to protect defendants from "litigation having *no* legal or factual basis." (emphasis added). *Id.* at 420, 98 S.Ct. at 700. Still, a district court must resist the "understandable temptation to engage in *post hoc* reasoning" once a plaintiff has unsuccessfully pursued a claim. *Id.* at 421–22, 98 S.Ct. at 700.

■ There is a significant difference between the bringing of cases with no foundation in law or facts at the outset and the failure to present evidence sufficient to justify relief at trial. The determination letter sent to Mitchell by the EEOC stated that "there is reasonable cause to believe that the allegation regarding the failure to hire is true." A plaintiff receiving such a letter would reasonably believe that there was an adequate basis in law and facts to pursue his claim. Moreover, since the EEOC is expert in the investigation of such claims, it cannot be quickly assumed that there was "no legal or factual basis" for the initiation of suit. *Christianburg,* 434 U.S. at 420, 98 S.Ct. at 699. Indeed, we have previously held that an EEOC finding of reasonable cause is "sufficient at least to create an issue of fact" requiring proceedings beyond the summary judgment stage. *Gifford v. Atchison, Topeka, & Santa Fe Ry. Co.,* 685 F.2d 1149, 1156 (9th Cir.1982). In addition, it is reasonable to believe that someone with Mitchell's qualifications would have been seriously considered for a position available through the Superintendent. Having reviewed the record, including the results of the discovery process, we hold that Mitchell did not continue to litigate his case after discovering it to be " 'meritless' [which] is to be understood as meaning groundless or without foundation ..." *Christianburg,* 434 U.S. at 421, 98 S.Ct. at 700, and that the district court's decision to the contrary constituted an abuse of discretion.

In rendering our decision, we are mindful of Congress' intent in enacting § 706(k). That section was not designed as a general penalty provision for unsuccessful plaintiffs attempting to enforce Title VII.

Rather, as the chosen instruments of Congress, plaintiffs are encouraged to pursue meritorious claims knowing that, if successful, attorney's fees will be awarded. Only in exceptional cases did Congress intend that defendants be awarded attorney's fees under Title VII. This is clearly not the type of case that justifies the award of attorney's fees to the defendants. *Cf. Wood v. McEwen,* 644 F.2d 797, 802 (9th Cir.1981) *cert. denied,* 455 U.S. 942, 102 S.Ct. 1437, 71 L.Ed.2d 654 (1982) (awarding fees against pro se litigant who filed over 36 cases raising same claims and asserting frivolous grounds of error on appeal).

Moreover, it would certainly not serve "the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII," *Christianburg,* 434 U.S. at 422, 98 S.Ct. at 701, to uphold an award of $72,933.75 in fees against a plaintiff like Dr. Mitchell who, in propria persona, pursues a case of the type involved here. Such an award after a trial lasting only two and one-half days would bode ill for plaintiffs pursuing more complex claims requiring more time in court for the presentation of their evidence and rebuttal of defendants' claims. The chilling effect upon civil rights plaintiffs would be disproportionate to any protection defendants might receive against the prosecution of meritless claims.

AFFIRMED IN PART AND REVERSED IN PART.

## CYNTHIA HOLCOMB HALL, Circuit Judge, concurring.

I agree with the results reached by the majority. I write separately to point out the problems I find in the sweeping language used by Judge Reinhardt.

I strongly disagree with the tone of the final two paragraphs of the majority's opinion. These paragraphs are, at least in spirit, inconsistent with the Supreme Court's opinion in *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). They are also unnecessary to the resolution of this case.

In *Christianburg,* the Supreme Court found the intent of Congress to be twofold:

"First, Congress desired to 'make it easier for a plaintiff of limited means to bring a *meritorious* suit'.... But second, *and equally important,* Congress intended to 'deter the bringing of lawsuits without foundation' by providing that the 'prevailing party'—be it plaintiff *or defendant*—could obtain legal fees." *Christianburg,* 434 U.S. at 420, 98 S.Ct. at 700 (emphasis added) (quoting *Grubbs v. Butz,* 548 F.2d 973, 975 (D.C.Cir.1976)). *See also Christianburg,* 434 U.S. at 419, 98 S.Ct. at 699 (rejecting an argument limiting the awarding of fees to a defendant only in cases where the "plaintiff was motivated by bad faith in bringing the action").

While a prevailing defendant will be entitled to fees only when the district court in the exercise of its discretion finds that the plaintiff's claim was without foundation, *Christianburg,* 434 U.S. at 422, 98 S.Ct. at 700, there is no support in *Christianburg,* nor does the majority cite any other authority, for the proposition that "[o]nly in exceptional cases did Congress intend that defendants be awarded attorney's fees under Title VII." *See ante* at 848. Whenever the district court finds that the plaintiff has brought a "frivolous, unreasonable, or groundless" suit, the court may assess fees. *Christianburg,* 434 U.S. at 422, 98 S.Ct. at 701. No other "exceptional" circumstances need apply.

Finally, whether a "frivolous" plaintiff appears in propria persona or not is irrelevant. So too, it is immaterial which "type" of Title VII case the plaintiff brings. Nor does § 706(k) as interpreted by the Supreme Court warrant any consideration of the length of the trial or other proceedings. A plaintiff who drags a frivolous suit through months of discovery, exacerbating the defendant's costs, should not be freed from the strictures of § 706(k), even if the case never goes to trial. Such plaintiffs ought to be "chilled."