**Pedro AMEZQUITA et al.,**
**Plaintiffs-Appellees,**

v.

**Rafael HERNANDEZ–COLON et al.,**
**Defendants-Appellants.**

**No. 74–1345.**

United States Court of Appeals
First Circuit.

June 20, 1975.

and brief in support, for defendants-appellants.

Pedro J. Saade Llorens, San Juan, P.R., with whom Pedro J. Varela, Hato Ray, P.R., Maria Dolores Fernos, Santurce, Luis A. Suárez Zayas, and Sonia A. Rodriguez, Hato Ray, P.R., were on brief in opposition, for plaintiffs-appellees.

Before COFFIN, *Chief Judge,* McENTEE and CAMPBELL, *Circuit Judges.*

McENTEE, *Circuit Judge.*

This civil rights action raises the question of what constitutional rights the members of a squatter community have in dealing with eviction at the hands of the governmental landowner.[1] The district court's findings of fact are set forth in the opinion below, 378 F.Supp. 737 (D.P.R. 1974), so we only summarize them here. Sometime on or before January 18, 1974, a group of squatters occupied part of a farm owned by the Land Authority of the Commonwealth of Puerto Rico and began setting up a community popularly called Villa Pangola. Shortly thereafter the Land Authority brought suit in the Superior Court of Puerto Rico seeking an injunction to evict the squatters. On two occasions prior to April 2, 1974, officials from two Commonwealth agencies visited the squatter community and tried unsuccessfully to persuade the members to leave voluntarily. On April 2 officials from the Housing Department and the Land Authority, assisted by members of the Police Department, were present at Villa Pangola to participate in a "cleaning" operation in which employees of the Land Authority used two bulldozers to destroy structures they determined to be uninhabited and without any signs of life.

Those events led to this class action by members of Villa Pangola. The plain-

Peter Ortiz, Deputy Sol. Gen., with whom Miriam Naverira de Rodon, Sol. Gen., was on application for certification

1. The threshold attack by defendants, that Puerto Rico is not a "State or Territory" within the meaning of 42 U.S.C. § 1983 (1970), has recently been rejected by this court. *Ortiz* v. *Hernandez Colon,* 511 F.2d 1080 (1st Cir. 1975).

tiffs' complaint claimed the following rights were being violated:

"a. The rights secured by the due process clause of the fourteenth amendment to be free from illegal and abusive practices including the use of excessive force,[2] the invasion and ransacking of homes without a warrant.

"b. The rights of plaintiffs secured by the equal protection of the laws clause of the Fifth and Fourteenth Amendments. . . . [3]

"c. The rights of plaintiffs against illegal searches and seizures secured by the Fourth Amendment. . . ."

After taking testimony and conducting a visual inspection of the site the district judge rendered an opinion ruling in favor of the two classes he certified[4] and ordering the defendants and their agents to refrain "from violating the civil rights of herein plaintiffs by destroying plaintiffs' property and invading plaintiffs' privacy without previously obtaining a judicial order to that effect." On the same day the district court opinion was rendered, July 22, 1974, the Superior Court of Puerto Rico entered an order directing the members of Villa Pangola to evacuate the land and remove their structures. *Land Authority of Puerto Rico* v. *Rivera*, Civil No. 74–187. The squatters' appeal from that order was dismissed without opinion by the Supreme Court of Puerto Rico on December 11, 1974. This appeal is not moot, however, because plaintiffs' claim for damages is still outstanding.

Despite some ambiguity,[5] the district court opinion seems to us to involve two propositions. A careful reading clearly

demonstrates that the court thought fourth amendment rights of the plaintiffs were being violated. It may be that the court barred eviction steps by the defendants prior to judicial authorization by analogy to the search warrant requirements of that amendment. The court also apparently thought that the due process clause of the fourteenth amendment barred eviction without prior judicial authorization. Under this theory if a homeless family moved into a vacant apartment in a state housing project, the state would be constitutionally barred from evicting by self-help. Whether these constructions of the Constitution withstand scrutiny are the questions we now turn to.

■ We begin with the fourth amendment. Citing *Katz* v. *United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the court ruled that "the practice on the part of some of the defendants of looking into and poking through the homes of some of the plaintiffs without a search warrant or judicial authorization of any kind before ordering the bulldozers to destroy some of the unoccupied structures constitute[d] an invasion of privacy." 378 F.Supp. at 744. We do not agree. "*Katz* teaches that Fourth Amendment protection extends only to situations in which the complaining person had a reasonable and legitimate expectation of privacy." *United States* v. *Missler,* 414 F.2d 1293, 1301 (4th Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 912, 25 L.Ed.2d 93 (1970); *accord, United States* v. *Clegg,* 509 F.2d 605, 610 (5th Cir. 1975) (no reasonable expectation that placement of telephone call or particular number called will not be recorded); *United States* v. *Hunt,* 505 F.2d

---

2. The district court made no findings on this claim, and therefore we will not discuss it.

3. This equal protection theory was reserved by the court below and we will say nothing more about it here.

4. One class included "those plaintiffs still residing in the community and the other [was] composed of those plaintiffs that suffered property damage because of defendants' actions." 378 F.Supp. at 739–40.

5. The cases cited by the district court do not advance our understanding of the substantive ruling. Both *Lynch* v. *Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), and *Monroe* v. *Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), dealt with jurisdictional questions under 42 U.S.C. § 1983 (1970), not with whether the facts showed a violation of a particular constitutional provision.

931, 937 (5th Cir. 1974), *cert. denied,* 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (U.S. May 19, 1975); *United States v. Continental Bank & Trust Co.,* 503 F.2d 45, 49 (10th Cir. 1974) (IRS subpoena of bank records); *Shaffer* v. *Field,* 484 F.2d 1196 (9th Cir. 1973). Thus we must determine whether these plaintiffs had "a reasonable expectation of freedom from governmental intrusion." *Mancusi* v. *DeForte,* 392 U.S. 364, 368, 88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154 (1968). Nothing in the record suggests that the squatters' entry upon the land was sanctioned in any way by the Commonwealth. The plaintiffs knew they had no colorable claim to occupy the land; in fact, they had been asked twice by Commonwealth officials to depart voluntarily. That fact alone makes ludicrous any claim that they had a reasonable expectation of privacy.

The outcome in the eviction action in the Superior Court of Puerto Rico is further proof that the plaintiffs could not have had any reasonable expectation of privacy. That action was against numerous named squatters and other unnamed squatters and was thus in the nature of a class action. Two named defendants answered the complaint and their attorneys were allowed to assume the legal representation of all the defendants. In these circumstances the plaintiffs are collaterally estopped from contesting the issues actually litigated and determined in that action. *P I Enterprises, Inc.* v. *Cataldo,* 457 F.2d 1012, 1015 (1st Cir. 1972). One ruling in that action is apposite here and demolishes any privacy claim:

"11. Defendants have no right whatsoever to remain on plaintiff's property described in this action, nor in any part thereof, or to have houses thereon, the possession by defendants over said property being illegal, their conduct failing to show any right at law, under the Constitution or under the precepts that govern the interdictive action."

Our research has not revealed any fourth amendment cases factually similar to this one, but cases with dispositive legal principles are not difficult to identify. At least three cases have held that a guest in a hotel or motel room loses his reasonable expectation of privacy when his rental period has elapsed. *United States* v. *Parizo,* 514 F.2d 52 (2d Cir. 1975) (recognizing close relationship between *Katz's* "reasonable expectation of privacy" concept and the "proprietary interest" concept it supposedly superseded); *United States* v. *Croft,* 429 F.2d 884, 887 (10th Cir. 1970); *State* v. *Roff,* 70 Wash.2d 606, 424 P.2d 643 (1967). *But see United States* v. *Botelho,* 360 F.Supp. 620 (D. Hawaii 1973) (defendant had reasonable expectation of privacy in cottage despite unpaid rent). A fortiori one who occupied the room by just inviting himself in could create for himself no reasonable expectation of privacy. These cases clearly indicate that the plaintiffs here had no reasonable expectation of privacy, and thus any search or seizure that occurred could not be an unreasonable one, which is all the fourth amendment proscribes. *Ker* v. *California,* 374 U.S. 23, 33, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

The fourth amendment status of the plaintiffs is also comparable to that of a car thief. Recently confronted with such a situation, the Maine Supreme Court wrote: "[T]his Defendant, escaping the scene of the crime with a hostage, in a car stolen from his victim, had no expectation of privacy which the law is willing to recognize as reasonable." *State* v. *Boutot,* 325 A.2d 34, 41–42 (Me.1974). In a similar case another court ruled that "a trespasser who places his property where it has no right to be has no right of privacy as to that property." *State* v. *Pokini,* 45 Haw. 295, 315, 367 P.2d 499, 509 (1961); *see Meade* v. *Cox,* 310 F.Supp. 233 (W.D.Va.1970), *aff'd on another ground,* 438 F.2d 323 (4th Cir.), *cert. denied sub nom., Meade* v. *Slayton,* 404 U.S. 910, 92 S.Ct. 234, 30 L.Ed.2d 182 (1971); *Derby* v. *Cupp,* 302 F.Supp. 686

(D.Ore.1969). We think a similar result obtains here. In so ruling we attribute no significance for fourth amendment purposes to the fact that the seizure was accomplished by destruction of the structures rather than by merely preventing the plaintiffs from having access to them. That element may have relevance for some other purpose,[6] but we cannot see that it changes the outcome under fourth amendment analysis.[7]

The district court found the fourth amendment violated on the reasoning that regardless of the illegality of the plaintiffs' invasion they did own the homes which they built, and thus they were "entitled to the constitutional protections against invasions of privacy . . .." 378 F.Supp. at 743.[8] "Without question, the home is accorded the full range of Fourth Amendment protections." *Lewis* v. *United States,* 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312 (1966). But whether a place constitutes a person's "home" for this purpose cannot be decided without any attention to its location or the means by which it was acquired; that is, whether the occupancy and construction were in bad faith is highly relevant. Where the plaintiffs had no legal right to occupy the land and build structures on it, those *faits accomplis* could give rise to no reasonable expectation of privacy even if the plaintiffs did own the resulting structures.

---

**6.** We observe that no just compensation claim is presented in this court. *Cf. Terrace Hotel Co.* v. *State,* 19 N.Y.2d 526, 529, 281 N.Y.S.2d 34, 38, 227 N.E.2d 846, 849 (1967) ("the crucial question is not the manner in which the taking occurred but, instead, whether a *compensable* property interest was taken"). Such a claim could not be pressed against the Commonwealth via § 1983, since it is not a "person" within the meaning of that statute. *Monroe* v. *Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *see Kao* v. *Red Lion Municipal Authority,* 381 F.Supp. 1163 (M.D. Pa. 1974). Moreover, such a claim would draw into question the constitutionality of 31 L.P.R.A. §§ 1165, 1166, quoted *infra,* and might necessitate a three-judge court to secure injunctive relief.

**7.** The same fourth amendment result might be reached on a consent theory. Of course the Land Authority would have to have power to consent to a governmental intrusion. *Niro* v. *United States,* 388 F.2d 535, 538 (1st Cir. 1968). But that would flow from its ownership of the land and the structures built in bad faith, *see Cedo* v. *Laboy,* 79 P.R.R. 740 (1956); 31 L.P.R.A. § 1165, and the fact that the squatters knew by prior official visits that they were not welcome. The Third Circuit recently stated that "as a general matter, a trespasser must be deemed to assume the risk that the owner of the property will consent to its search." *Government of Virgin Islands* v. *Gereau,* 502 F.2d 914, 926–27 (3d Cir. 1974).

This theory has the apparent imperfection that it contemplates approving Land Authority action by Land Authority fiat. But the opposite result would treat a governmental landowner differently from a private one when it came to dealing· with trespassers, a result which has not been thought constitutionally required. *See United States* v. *West,* 232 F.2d 694, 698 (9th Cir.), *cert. denied,* 352 U.S. 834, 77 S.Ct. 51, 1 L.Ed.2d 53 (1956): "It is also beyond question that 'the government has, with respect to its own lands, the rights of an ordinary proprietor, to maintain its possession and to prosecute trespassers.' *Camfield* v. *United States,* 1897, 167 U.S. 518, 524 [17 S.Ct. 864, 42 L.Ed. 260]." We note, however, that this consent theory seems to have been rejected implicitly in *United States* v. *Hagarty,* 388 F.2d 713 (7th Cir. 1968). Hagarty, a government employee, had his conversation intercepted by warrantless electronic eavesdropping in the office of another government employee under investigation. The court ruled that Hagarty's statements should have been suppressed. However, the consent theory was not squarely raised and *Hagarty* was a criminal prosecution, not a civil rights action. It could be argued that the fourth amendment constraints on the government as law enforcer are greater than those on it as landowner. *Cf. Biehunik* v. *Felicetta,* 441 F.2d 228, 231 & n. 5 (2d Cir.), *cert. denied,* 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971).

**8.** While the plaintiffs may have originally owned the materials used to construct the razed structures, we strongly question whether they owned the homes in the property law sense. *See* 31 L.P.R.A. §§ 1165, 1166. *See also Puerto Rico Urban Renewal & Housing Corp.* v. *Roman,* No. R–70–189 (P.R.Sup.Ct., Dec. 13, 1971) (trial court on similar facts concluded squatters owned structures they built; supreme court reversed that conclusion); *Lippitt* v. *Llanos,* 47 P.R.R. 254 (1934).

■ In evaluating the claim based on the due process clause of the fourteenth amendment, we first inquire whether the interest at issue is a constitutionally protected "liberty" or "property" interest. Only if the interest is a protected one need we determine what process is due. *Geneva Towers Tenants Org.* v. *Federated Mortgage Investors,* 504 F.2d 483, 488 (9th Cir. 1974). We cannot see that plaintiffs have a protected "liberty" interest. The conduct in which they have engaged is criminal under Puerto Rico law. 33 L.P.R.A. § 1442. The Commonwealth need not afford them any procedural due process before terminating such activity.

A similar answer is required to the question whether there is a protected "property" interest. We turn to Commonwealth law to determine whether such a protected interest exists. *Board of Regents* v. *Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Germane to this issue are two Puerto Rico statutes:

> "He who builds, plants, or sows in bad faith on another's land, loses what he has built, planted or sown, without having any right to indemnity." 31 L.P.R.A. § 1165.

> "The owner of the land on which any one has built, planted or sown in bad faith, may exact the demolition of the work or the removal of the planting or sowing and the replacing of everything in its former condition, at the expense of the person who built, planted or sowed." *Id.* § 1166.

These statutes preclude us from recognizing in the plaintiffs a "property" interest in the land which could not be disturbed without procedural preliminaries.[9]

■ It is possible, however, that §§ 1165 and 1166 contemplate prior judicial approval as a matter of Puerto Rico

public policy; that is, they may create a cause of action rather than a right of self-help. *Cf. Janer* v. *Alvarez,* 75 P.R.R. 34, 37 n.1 (1953). Even if this were so, a question which we do not decide, our fourteenth amendment conclusion is unaltered. The assumed statutory policy of preservation of the public peace was effectuated in this case by the presence of the police at the scene. Identification of a goal beyond that, namely, the creation of an interim property right, would be difficult to reconcile with the criminal ban on this kind of dispossession. Procedural protections do not necessarily determine that a property right exists. *See Arnett* v. *Kennedy,* 416 U.S. 134 (1974); *Suckle* v. *Madison General Hospital,* 499 F.2d 1364, 1366 (7th Cir. 1974). The important question in determining whether procedural protection defines a property right is whether the protection amounts to a substantive restriction on the ultimate action being challenged. *See Suckle* v. *Madison General Hospital, supra.* Here this translates to the specific question whether a prior hearing could have resulted in allowing the plaintiffs to remain on the land. They give us no reason to believe such a result was possible, and therefore requiring a hearing amounts to an exercise in futility. *Compare* the instant case *with Lopez* v. *Henry Phipps Plaza South, Inc.,* 498 F.2d 937 (2d Cir. 1974).

We conclude that the injunction should not have issued and we therefore vacate it. We need not reach the questions whether certain findings of fact made below were clearly erroneous or whether certain defendants should not have been enjoined. Appellants sought to have us certify a question of local law to the Puerto Rico Supreme Court, but our decision does not turn on an ambiguous question of local law, and therefore we deny that motion.

Reversed.

9. An express or implied license to occupy the land would have controverted bad faith and produced a liberty of property interest for the plaintiffs. But we have already noted that nowhere in the record does it appear that plaintiffs' activities were authorized by any sort of license or governmental policy. Moreover, we note that the criminal statute proscribing this kind of conduct became effective on March 10, 1972, *see* 33 L.P.R.A. § 1442, as amended. Yet plaintiffs alleged that their acts occurred after January 18, 1973. *See* 378 F.Supp. at 739. We cannot find governmental sanction of plaintiffs' acts in the face of these facts.