25 F.3d 784
 29 Fed.R.Serv.3d 218
 Robert Lee ZIMMERMAN, Plaintiff-Appellant,
v.
BISHOP ESTATE, a charitable trust; Bishop Estate Trustees
William Richardson, Henry Peters, Oswald Stender, Myron
Thompson and Matsuo Takabuki in their official capacities;
Bishop Estate Trustees William Richardson, Henry Peters,
Myron Thompson and Matsuo Takabuki individually; Elaine
Dung and Paul Cathcart, in their capacities as employees of
Bishop Estate and individually; Frank F. Fasi, in his
capacity as Mayor of the City and County of Honolulu; City
and County of Honolulu; Douglas Gibb, in his former
capacity as Chief of Police of the Honolulu Police
Department and individually; Peter Bertulfo, in his
capacities as a Police Officer for the City and County of
Honolulu and as a Caretaker for the Bishop Estate and
individually; Tim Liu, in his capacity as a legal advisor
to the Police Department of the City and County of Honolulu;
James R. Aiona, Jr., in his former capacity as Head of the
Trials Division of Corporation Counsel for the City and
County of Honolulu and individually; Tedson Koja, Keith
Kaneshiro and Charles Marsland, in their capacities and
former capacity as Prosecutors for the City and County of
Honolulu; Captain B. Correa, Lt. L. Wong, Sgts. W. Cambra,
K. Luke and T. Hirayama and Officers G. Williams, G. Goeas,
G. Nihipali, J. Keanu and G. Witt, in their official
capacities as Police Officers and individually, Defendants-Appellees.
 Nos. 92-15794, 92-16408.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Aug. 11, 1993.*
Decided May 31, 1994.
 
 Robert Zimmerman, in pro per.
 Cheryl Nakamura, Rush Moore Craven Sutton Morry & Beh, Tracy Lowell Wolf, Deputy Corp. Counsel, City and County of Honolulu, Honolulu, Hawaii, for the defendants-appellees.
 On Appeal from the United States District Court for the District of Hawaii.
 Before: REINHARDT, LEAVY, Circuit Judges, and MERHIGE, Jr.,** Senior District Judge.
 Opinion by Judge LEAVY; Partial Concurrence and Partial Dissent by Judge REINHARDT.
 OPINION
 LEAVY, Circuit Judge:
 
 FACTS AND PRIOR PROCEEDINGS
 
 1
 This case arose when the appellant, Robert Lee Zimmerman, was arrested for trespass while a house guest of the Kanes, who were squatters in a shack on property owned by the Bishop Estate of Hawaii. In early 1988, the Kanes moved onto the property. In March 1988, Mrs. Kane's father wrote to the Bishop Estate and requested permission for his daughter to be appointed caretaker of the property. Permission was declined in April 1988. In June 1988, the Bishop Estate sent the Kanes a letter warning them that they were trespassing by residing on the property and that they had to vacate. The letter was followed by visits by Elaine Dung Brown, the Bishop Estate land manager, and by Peter Bertulfo, the caretaker appointed by the Estate. Bertulfo, a police officer, entered into a tenancy agreement with the Bishop Estate on October 24, 1988.
 
 
 2
 On October 26, 1988, Brown and Bertulfo went to the property and warned the Kanes that they had to leave. The family agreed to vacate in five days. On October 31, 1988, Brown and Bertulfo returned with a police officer and after discussion, they agreed to allow the Kanes one more day to vacate the premises. On November 1, 1988, Brown and Bertulfo returned with police officers, who warned the Kanes and their guests, including Zimmerman, that they were trespassing. Everyone left, except Mrs. Kane and Zimmerman, who were arrested. They were taken to the police station, charged with trespass in the second degree and released on bail.
 
 
 3
 Mrs. Kane then moved back on the property, prompting the Bishop Estate to file an action for ejectment. The Kanes then moved from the premises. The criminal trespass proceedings against Mrs. Kane and Zimmerman were dropped.
 
 
 4
 In February 1990, Zimmerman filed this pro se action against the Bishop Estate, its trustees, and certain city and county officials. The amended complaint alleged a civil rights violation under 42 U.S.C. Sec. 1983, a conspiracy to violate civil rights, and supplemental state claims.[1] The district court granted summary judgment to the Bishop Estate and to the city and county defendants. The district court also granted the Bishop Estate's motion for attorney's fees and sanctions pursuant to 42 U.S.C. Sec. 1988 and Fed.R.Civ.Proc. 11.
 
 
 5
 Zimmerman, appearing pro se, appeals the district court's summary judgments in favor of the Bishop Estate and the Bishop Estate Trustees and employees (the private defendants), and the mayor of Honolulu, the City and County of Honolulu, the former and acting chiefs of police, two prosecutors, and various other municipal and county employees (the city defendants). Zimmerman argues that the district court erred by (1) determining that there was no constitutional violation under 42 U.S.C. Sec. 1983; (2) dismissing Zimmerman's supplemental state tort claims; (3) granting protective orders as to his discovery requests; (4) denying his motions to recuse the district court judge and magistrate judge; and (5) bifurcating his punitive damages claim. Zimmerman also appeals the district court's award of sanctions and attorney's fees to the private defendants.
 
 
 6
 We affirm the district court on the merits, affirm the award of sanctions regarding Zimmerman's improper motives, and reverse the award of sanctions on the malicious prosecution claim.
 
 DISCUSSION
 1. 42 U.S.C. Sec. 1983 Claim
 
 7
 Zimmerman argues that the warrantless arrest violated his Fourth Amendment rights as a guest and that there were no exigent circumstances to justify the search. A party invoking Fourth Amendment protection must have a subjective expectation of privacy that is objectively reasonable. United States v. Taketa, 923 F.2d 665, 670 (9th Cir.1991).
 
 
 8
 Zimmerman contends that the Kanes had an expectation of privacy because of the length of residency, their improvement of the property and the private defendants' acquiescence in the Kanes' presence. There is no evidence that the Kanes owned, rented, or leased the land or the residence. The private defendants were subsequently given summary possession of the parcel in state court proceedings.
 
 
 9
 Even if Mrs. Kane had a subjective expectation of privacy, her expectation was not objectively reasonable. In Amezquita v. Hernandez-Colon, 518 F.2d 8, 11-12 (1st Cir.1975), cert. denied, 424 U.S. 916, 96 S.Ct. 1117, 47 L.Ed.2d 321 (1976), the court held that squatters had no reasonable expectation of privacy where they had no legal right to occupy the land and build structures on it. Similarly, the Tenth Circuit has concluded that the Fourth Amendment rights of a trespasser living on federal land were not violated because he had no reasonable expectation of privacy. United States v. Ruckman, 806 F.2d 1471, 1472-74 (10th Cir.1986).
 
 
 10
 Here, the Kanes requested, and were denied, permission to reside on the property. Three months later they were informed by letter that they were trespassing. In later visits they were told that they were trespassing. There is no dispute of material fact regarding the ownership of the property or whether the private defendants acquiesced in the presence of the Kanes. As a guest on the property, Zimmerman had no greater right to be on the property than did the Kanes. The Kanes' improvement of the property does not give rise to a reasonable expectation of privacy when they had no legal right to occupy the land. See Amezquita, 518 F.2d at 12.
 
 
 11
 Even if we assume that Zimmerman and the Kanes had an expectation of privacy that was objectively reasonable, Zimmerman's constitutional rights were not violated because the arrest was lawful. There is no Fourth Amendment violation if the officers have obtained the consent of a third party who possesses common authority over the premises. United States v. Matlock, 415 U.S. 164, 171 & n. 7, 94 S.Ct. 988, 993 & n. 7, 39 L.Ed.2d 242 (1974). The police were provided with evidence of the private defendants' ownership of the property at the time of the arrest. Moreover, even if the private defendants did not have actual authority over the premises, the arrest was valid because the police, at the time of the entry, reasonably believed they did have authority over the premises. See Illinois v. Rodriguez, 497 U.S. 177, 188-89, 110 S.Ct. 2793, 2801-02, 111 L.Ed.2d 148 (1990). Because we conclude that there is no evidence of a constitutional violation, we do not decide whether the private defendants acted under color of state law.
 
 
 12
 We also affirm the district court's grant of summary judgment to the city defendants on the federal claims because there is no evidence that Zimmerman's constitutional rights were violated. See Palmerin v. Riverside, 794 F.2d 1409, 1414-15 (9th Cir.1986) (absent any constitutional violations by individual defendants, there can be no municipal liability).
 
 2. Supplemental State Claims
 
 13
 In his amended complaint, Zimmerman alleges several state tort claims. We review the district court's determination of state law de novo. In re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).
 
 
 14
 a. Malicious Prosecution
 
 
 15
 Under Hawaii law, a warrantless arrest is lawful if a police officer has probable cause to believe that an offense is being committed in the officer's presence. House v. Ane, 56 Haw. 383, 538 P.2d 320, 325 (1975). Hawaii agrees with the rule in Amezquita, 518 F.2d at 11-12, that squatters have no reasonable expectation of privacy. State v. Dias, 62 Haw. 52, 609 P.2d 637, 639-40 (1980). A landlord's acquiescence to the trespass for a "considerable period of time," however, can give rise to an expectation of privacy. Id. 609 P.2d at 640. Here, there is no evidence that the private defendants acquiesced in the Kanes' trespass. Because the officers had probable cause to believe that a trespass was being committed in their presence, the warrantless arrest was lawful. See House, 538 P.2d at 325. As to the private defendants, even if we assume that they "initiated" the prosecution, the existence of probable cause protects them from liability as well.
 
 
 16
 b. Article I, section 7, of the Hawaii Constitution
 
 
 17
 The application of article I, section 7, of the Hawaii Constitution, is limited to criminal cases.[2] State v. Okubo, 651 P.2d 494, 500 (1982), aff'd, 67 Haw. 197, 682 P.2d 79 (1984). Even if section 7 applied in a civil context, Zimmerman has not met his burden of showing that he had a legitimate expectation of privacy under Hawaii law. See Dias, 609 P.2d at 639-40. In addition, Hawaii has adopted the Matlock rule, i.e., that a third party can validate a warrantless search if they have authority to consent to search. State v. Mahone, 67 Haw. 644, 701 P.2d 171, 173-74 (1985). We agree with the district court's dismissal of Zimmerman's claim under Article I, section 7, of the Hawaii Constitution.
 
 
 18
 Because Zimmerman does not challenge the district court's conclusions on the remaining state issues, he has waived any objections to those holdings and has abandoned those issues on appeal. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir.1988).
 
 3. Protective Orders
 
 19
 Zimmerman argues that the district court erred in granting protective orders and in denying his requests for further discovery. The district court denied Zimmerman's additional requests for discovery because "further discovery requests would be fruitless." We conclude that neither the magistrate judge nor the district judge abused his discretion in denying Zimmerman's discovery motions and granting defendants' motions for protective orders.
 
 4. Recusal
 
 20
 Zimmerman contends that the denial of his motions to recuse the magistrate judge and the district judge was improper. His allegations are not legally sufficient to require recusal and neither the district judge nor the magistrate judge abused his discretion in denying the motions. Zimmerman argues that the magistrate judge received a financial benefit from an investment in a city-sponsored housing development without reporting it. We decline to decide this issue because it was raised for the first time on appeal. See Brogan v. San Mateo County, 901 F.2d 762, 765 (9th Cir.1990).
 
 5. Bifurcation of Punitive Damages Claim
 
 21
 Zimmerman appeals from order granting a separate trial of plaintiff's punitive damages claim and contends that separate trials are wasteful of the court's and jury's time. Our ruling on the other issues renders that contention moot.
 
 6. Sanctions
 
 22
 In the second appeal, Zimmerman contends that the district court erred in awarding $10,006 in attorney's fees to the private defendants pursuant to 42 U.S.C. Sec. 1988 and Federal Rule of Civil Procedure 11.
 
 
 23
 a. Malicious Prosecution
 
 
 24
 In granting sanctions for the frivolousness of the malicious prosecution claim, the court found that there was no evidence that the private defendants controlled the decisions of the city prosecutor to initiate criminal proceedings. Contrary to the district court's statement, there was at least some evidence to support Zimmerman's claim that the private defendants "initiated" the proceedings. Zimmerman presented a transcript of a tape recorded conversation involving Zimmerman, Mr. Boyd, Elaine Dung Brown, and "police officer Tateishi" that could at least arguably support a finding that the desire of the private defendants to have the "proceedings initiated, expressed by direction, request or pressure of any kind" were the "determining factor in the official's decision to commence the prosecution." See Restatement (Second) of Torts Sec. 653 cmt. g (1977); see also Griffiths v. CIGNA Corp., 988 F.2d 457, 463-65 (3d Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993). Although there are no Hawaii cases applying section 653, comment g of the Restatement, Zimmerman had at least an arguable basis for bringing a malicious prosecution claim against the private defendants. We conclude that the district court abused its discretion in granting sanctions on this issue.
 
 
 25
 b. Improper Motives
 
 
 26
 The district court found that many of Zimmerman's questions "could not possibly have been designed to lead to the discovery of admissible evidence" and it concluded that Zimmerman's "motives were to attack Bishop Estate for what it stands for." Zimmerman argues that it was not true that he used the case to further his political campaign. A finding of improper purpose, however, is based on an objective standard. Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir.1990). A court should award attorney's fees to civil rights defendants only in exceptional cases. Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 202 (9th Cir.1988), cert. denied, 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1989). This is such a case. On the basis of the district court's examples of improper questions contained in Zimmerman's interrogatories and requests for documents, we conclude that the district court did not abuse its discretion in imposing Rule 26(g) sanctions.[3]
 
 
 27
 c. Timeliness
 
 
 28
 Zimmerman also argues that the sanctions were untimely because they were awarded two years after the objectionable behavior. The appropriate time period for determining sanctionable misconduct must be evaluated in light of the circumstances of each case. See In re Yagman, 796 F.2d 1165, 1182-84 (9th Cir.), amended on other grounds, 803 F.2d 1085 (9th Cir.1986). Here, the award of sanctions was made after the order granting summary judgment to the private defendants and after denial of motions for reconsideration. We conclude that the award of sanctions was timely. Zimmerman's additional argument that the motion for sanctions was improperly timed to intimidate him into submitting without an appeal is without merit.
 
 
 29
 d. Lack of Warning
 
 
 30
 Zimmerman argues that the sanctions were applied without any warning or caution by the court that any of his claims were frivolous. He cites no authority for the proposition that the court must give him advance warnings. Assuming that Zimmerman is making a due process argument, it is without merit. Zimmerman is entitled to notice that the court is considering sanctions against him and an opportunity to be heard in opposition. See Hudson v. Moore Business Forms, Inc., 898 F.2d 684, 686 (9th Cir.1990). The private defendants moved for imposition of sanctions and Zimmerman had an opportunity to respond. The district court held a hearing on sanctions. The district court afforded Zimmerman all the process that was necessary to safeguard his rights.
 
 
 31
 e. Amount of Sanctions
 
 
 32
 Zimmerman contends that an award of attorney's fees of $10,006 is "high" and he claims that the court did not consider his limited resources. Although the district court should consider the plaintiff's ability to pay, see Miller v. Los Angeles County Bd. of Educ., 827 F.2d 617, 621 (9th Cir.1987), a separate hearing on the ability to pay is not required. Patton v. County of Kings, 857 F.2d 1379, 1382 (9th Cir.1988). Moreover, in Miller, the court said that a district court should not refuse to award attorney's fees solely on the ground of the plaintiff's financial situation. Miller, 827 F.2d at 621 n. 5. Zimmerman appears to be arguing that the private defendants do not need the money, rather than arguing that he is unable to pay. The district court did not abuse its discretion in declining to consider expressly Zimmerman's ability to pay. We conclude, however, that the district court erred by including in the sanction award the private defendants' expenses incurred in prosecuting the Rule 11 motion. See Lockary v. Kayfetz, 974 F.2d 1166, 1178 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2397, 124 L.Ed.2d 298 (1993).
 
 
 33
 The private defendants also seek attorney's fees and costs on appeal. Although Zimmerman did not prevail on the merits, we do not find that the appeal is frivolous and we decline to award attorney's fees and costs on appeal.
 
 
 34
 Finally, we dismiss the city defendants from appeal No. 92-16408 because they never sought sanctions and Zimmerman does not raise any issues affecting them in this appeal.
 
 
 35
 In conclusion, we affirm the district court on the merits and the sanctions as to Zimmerman's improper discovery motives, but reverse the sanctions regarding the frivolousness of his malicious prosecution claim. We remand to the district court for recalculation of the sanctions award in accordance with this decision.
 
 
 36
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. Each party shall bear their own costs.
 
 
 37
 REINHARDT, Circuit Judge, concurring specially in part and dissenting in part:
 
 I.
 
 38
 I respectfully dissent from Part 6.b of the majority opinion, but concur in all other parts. The majority concludes that this is an "exceptional" case and that the district court properly awarded sanctions against Zimmerman. See Maj.Op., supra, at 789-790. I disagree. In my opinion, this case is not so "exceptional" that it warrants the imposition of discovery sanctions against a civil rights plaintiff. Accordingly, I would reverse the district court's award as an abuse of discretion.
 
 
 39
 It is clear that Zimmerman, a perennial candidate for office and a gadfly, was a nuisance to the establishment, to Bishop Estate, and to a number of Hawaiian governmental entities. Most communities have their Zimmermans, and few are delighted by their presence. In truth, the Zimmermans of this world are frequently obstreperous. They even get under the skin of federal judges. Still, tolerance rather than retribution should be the order of the day in our courts.
 
 
 40
 Here, the disputed sanctions were imposed after Zimmerman sued Bishop Estate under both 42 U.S.C. Sec. 1983 and Hawaiian common law. He alleged that Bishop Estate, a powerful force in Hawaiian affairs, had caused him to be falsely arrested and maliciously prosecuted, in violation of his civil rights. Specifically, Zimmerman claimed that Bishop Estate used its immense influence to have him arrested and prosecuted by the City of Honolulu because he was a political irritant.
 
 
 41
 On April 27, 1992, the district court awarded $10,006 in attorney's fees against Zimmerman. The court found that he had used discovery for the "improper purpose" of furthering his political campaigns. It concluded that several of Zimmerman's discovery requests "cannot conceivably be relevant to the civil rights and tort claims alleged in Plaintiff's Complaint," but "were instead aimed at attacking Bishop Estate for what it stands for." See Appendix infra (listing the district court's examples).
 
 II.
 
 42
 We have held that a court may award sanctions against a civil rights plaintiff only in "exceptional cases." See, e.g., Mitchell v. Office of the Los Angeles County Superintendent of Schools, 805 F.2d 844, 848 (9th Cir.1986) (Section 1988 sanctions), cert. denied, 484 U.S. 858, 108 S.Ct. 168, 98 L.Ed.2d 122 (1987); see also Woodrum v. Woodward County, 866 F.2d 1121, 1127-28 (9th Cir.1989) (Rule 11 sanctions).
 
 
 43
 In the discovery context, a case is "exceptional"--i.e., it warrants the imposition of sanctions--if the civil rights plaintiff's requests are so irrelevant that they "could not possibly have been designed to lead to the discovery of admissible evidence." See Maj.Op., supra, at 789 (quoting the district court; emphasis added).[1]
 
 
 44
 Here, Zimmerman's discovery requests were, in my view, not sanctionable. They could "possibly have been designed to lead to the discovery of admissible evidence." All the interrogatories specifically relied on by the district court readily qualify under this standard. Nos. 184, 186, 188, 200, and 12 all pertain directly to Bishop Estate's alleged influence over the State of Hawaii in all branches of state government or to its relations with Zimmerman. Such information is clearly relevant to Zimmerman's charge that Bishop Estate's influence led to his arrest and prosecution, or to his allegations that Bishop Estate was prejudiced against him and had a motive for causing the authorities to take action against him. The other interrogatory specifically relied on by the court is No. 148. Although not posed artfully, the question was clearly designed to elicit information to the effect that Bishop Estate (or indeed almost anyone else) could have exercised influence over the prosecutor's office.
 
 
 45
 Zimmerman's requests for documents are similarly relevant. Several of his requests (Nos. 32, 33, 57, and 58) pertain directly to Bishop Estate's alleged influence over various state entities and officials, and how that influence ultimately led to Zimmerman's arrest. The other requests expressly relied on by the district court (Nos. 30 and 31) pertain to the salaries and benefits of various defendants in this lawsuit. Because Zimmerman sought punitive damages in his complaint, he is entitled not only to information about the defendants' salaries and benefits, but also to information about their assets.
 
 
 46
 The district court stated that the above discovery requests were merely "a few examples" of Zimmerman's improper questions. However, it failed to identify any of Zimmerman's other discovery requests which it believed to be improper and failed to show what, if anything, made them so. Without that information, we have no way of knowing what the court had in mind or why it imposed the sanctions on the basis of those requests. Accordingly, we must rely solely upon the discovery requests that the district court deemed significant enough to cite.[2]
 
 
 47
 In short, Zimmerman may be wholly mistaken in his charges, he may be self-deluded, he may be a wholly bothersome or even nutty pro se litigant. But, whatever he is, his interrogatories and requests for documents are hardly so irrelevant to the causes of action he alleged that they "could not possibly have been designed to lead to the discovery of admissible evidence."
 
 III.
 
 48
 In sum, I believe that this case is not so "exceptional" as to warrant the awarding of discovery sanctions against Zimmerman. Accordingly, I would reverse the district court's award. I respectfully dissent.
 
 APPENDIX
 Interrogatories:
 
 49
 148. Admit that the Prosecutor's Office is highly politicized and staffed with incompetent prosecutors.
 
 
 50
 184. Admit that the vast financial resources of the Bishop Estate enable it to exercise enormous influence over judicial, political, economic and social events in the State of Hawaii.
 
 
 51
 186. Admit that the Bishop Estate is prejudiced against Plaintiff because he Chooses [sic] to run in the State's elections against its preferred candidates.
 
 
 52
 188. Admit that the Bishop Estate is prejudiced against Plaintiff because Plaintiff thiks [sic] that the Bishop Estate's tax status as a charitable trust is a sham and should be canceled.
 
 
 53
 200. Admit that the interlock between the Hawaii State Supreme Court and the Bishop Estate has produced conflicts of interest in lawsuits that have been pending from time-to-time before the Hawaii State Supreme Court.
 
 
 54
 12. Plaintiff requests each and every record which reflects the tax status of Bishop Estate and each of its subsidiaries.
 
 Requests for Production of Documents:
 
 55
 30. Plaintiff requests a job description, date of employment, list of qualifications and annual renumeration including bonuses, expense accounts, and benefits for the positions of Bishop Estate Trustee, Bishop Estate caretaker, Bishop Estate land manager, Corporate Counsel for the City and County of Honolulu....
 
 
 56
 31. Plaintiff seeks a schedule of the salaries paid to trustees of the Bishop Estate from 1984 to 1990.
 
 
 57
 32. Plaintiff seeks a schedule of the amounts of money paid over to the Kamehameha Schools and other charities by the Bishop Estate for the period from 1984 to 1990.
 
 
 58
 33. Plaintiff seeks a schedule of all of the beneficiaries of the Bishop Estate and a schedule of the monies paid to them for the period from 1984-1990.
 
 
 59
 57. Plaintiff seeks from Bishop Estate all documents pertaining to relationships with, or participation with or joint ventures with the Office of Hawaiian Affairs or the various state, city and federal agencies involved in the governance, administration, oversight and implementation of the Hawaiian Homesteads Act and any related legislation.
 
 
 60
 58. Plaintiff seeks from Bishop Estate the names of all sitting, retired and deceased members of the judiciary that have had any relationship with or to the Bishop Estate, including business dealings, legal, consultive, debtor, or any other such relationship.
 
 Deposition Questions:
 
 61
 Are you now associated with the Save Sandy Beach coalition? ... Have you ever been associated with the Save Sandy Beach coalition?
 
 
 62
 Do you know of anyone who works for Bishop Estate who's associated with the Save Sandy Beach Coalition?
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Robert R. Merhige, Jr., Senior District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 28 U.S.C. Sec. 1367 (1990) now codifies under the name "supplemental jurisdiction" the caselaw doctrines of "pendent" and "ancillary" jurisdiction
 
 
 [2]
 Article I, section 7, provides:
 The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.
 
 
 [3]
 Although the district court referred to Rule 11 sanctions, we have held that Rule 11 does not govern most discovery-related sanctions. "Sanctions for discovery abuses are governed primarily by Rule 26(g) ..., rather than Rule 11, of the Federal Rules of Civil Procedure." In re Yagman, 796 F.2d 1165, 1187 (9th Cir.1986), see also Advisory Notes, 1983 Amendment, Fed. Rule Civ.Pro. 11 ("Although the encompassing reference to 'other papers' in ... Rule 11 literally includes discovery papers, the certification requirement in that context is governed by ... Rule 26(g).")
 
 
 [1]
 In addition to being a civil rights plaintiff, Zimmerman is also a pro se litigant. The Supreme Court has held that pro se litigants are held to "less stringent standards" than lawyers, see Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972), and that sanctions should "rarely be awarded" against them, see Hughes v. Rowe, 449 U.S. 5, 15, 101 S.Ct. 173, 178-79, 66 L.Ed.2d 163 (1980) (emphasis added). The standard cited by the majority is therefore consistent with the Supreme Court precedent concerning pro se litigants
 
 
 [2]
 Although the exact significance of the "Save Sandy Beach Coalition" deposition questions is unclear, they play a relatively minor part in the sanctions drama. Under the district court's test, sanctions could be imposed only if all of Zimmerman's requests were irrelevant. In any event, because the district court also failed to explain why the deposition questions were irrelevant, we need not defer to its findings on that point