Blaisdell v. Rochester, NH, et al.     CV-97-082-M    10/19/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


George Blaisdell,
       Plaintiff

       v.                                            Civil No. 97-82-M

City of Rochester, New Hampshire;
Gary Stenhouse; Danford J. Wensley;
Donald L. Vittum; and James Twombly,
       Defendants


**O R D E R**


George Blaisdell seeks $21 Million in damages, plus interest and attorney's fees, for losses and personal injury he claims to have sustained when the City of Rochester demolished the structure in which he had been living (after it had been severely damaged by fire and declared a danger to the public safety). In his 11 count complaint, Blaisdell alleges that defendants violated many of his constitutionally protected rights, engaged in an unlawful conspiracy in violation of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), and committed numerous common law torts.


By prior orders, the court granted defendants' motion for summary judgment as to plaintiff's section 1983 claim for inverse condemnation of his personal property (Count 1). See Order dated January 1, 1999. The court also dismissed plaintiff's state law claims for malicious prosecution (Count 7), an implied cause of action under the New Hampshire Constitution (Count 10), and abuse

of process (Count 11). <u>See</u> Order dated August 28, 1998. Finally, as to all of plaintiff's remaining claims, the court held that the pertinent statute of limitations limited his claims to events that occurred on or after April 5, 1993. <u>Id.</u>

Defendants have moved for summary judgment as to all of plaintiff's remaining federal claims. Plaintiff objects. At a pretrial conference conducted on September 28, 1999, the court orally informed the parties of its intention to grant defendants' pending motions for summary judgment and to decline to exercise supplemental jurisdiction over plaintiff's state law claims. Nevertheless, it represented to plaintiff that it would issue a brief written order, outlining the legal basis for its ruling.

## Background

The facts giving rise to the parties' dispute are discussed in the court's previous orders and need not be recounted again. They are also addressed in detail in defendants' memorandum of law (document no. 77) and their supplemental memorandum (document no. 87). It is sufficient to say that at a 1983 tax sale, the City purchased the property located at 125 Charles Street, Rochester, New Hampshire. Although plaintiff disputes the validity of the City's title to that property, the issue appears to have been fully and finally litigated in the state system. In 1993, after years of legal wrangling between the parties, the Strafford County Superior Court ruled that the City acquired

2

valid title to the subject property and granted the City a writ of possession. The City of Rochester v. Blaisdell, No. 86-C-094 (Strafford County Superior Court). See Exhibits DD and EE to defendants' memorandum (submitted with document no. 77). Plaintiff does not claim, nor does the record suggest, that he appealed those orders to the New Hampshire Supreme Court.

Notwithstanding the fact that the City purchased the subject property at a tax sale in 1983 and acquired title to it by tax deed in 1985, plaintiff continued living there until fire destroyed the property in February, 1993. That fire caused substantial damage not only to the structures located on the property, but to many of plaintiff's personal belongings as well. The combination of the fire and the damage subsequently caused by exposure of the damaged structures to the elements rendered the property unsafe, uninhabitable, and a danger to the public. Many neighbors abutting the property began complaining about the dangers posed by the damaged structures, and reported that the property contained exposed rotting food and medical waste. Among other things, local authorities were concerned that the damaged structures and potentially hazardous exposed materials on the site posed a substantial threat to children, who passed by the property on their way to a neighboring school.

The property was cordoned-off and members of the public (including plaintiff) were not permitted to enter, for fear that

3

they might be seriously injured.  Plaintiff resisted the City's efforts to keep him off the property and, despite several warnings that he could not enter the property without first signing a waiver (holding various defendants harmless should he sustain any injuries), plaintiff refused to sign the waiver and repeatedly entered the property.  On at least two occasions, he was arrested for trespassing.

In March of 1993, the Rochester Fire Chief, acting pursuant to the BOCA National Fire Prevention Code and N.H. Rev. Stat. Ann. 154:20, ordered the City, as record owner of the property, to demolish the structures located at 125 Charles Street. Plaintiff then filed with the Strafford County Superior Court a "Petition for Temporary Ex Parte Restraining Order and Injunctive Relief," seeking to prevent the planned demolition.  See Exhibit P (attached to document no. 77).  After conducting an evidentiary hearing on the matter, the court held that the buildings located at 125 Charles Street were structurally unsound and posed a threat to public health and safety.  Accordingly, it denied plaintiff's petition for a restraining order and injunctive relief.  See Exhibits R and S.  The City then proceeded with the demolition.[1]

---

[1]     Plaintiff appealed the Superior Court's order to the New Hampshire Supreme Court, which temporarily enjoined the City from completing the planned demolition.  The City subsequently agreed to allow plaintiff access to the property for one week. Accordingly, the Supreme Court dismissed plaintiff's appeal as moot.

4

**Discussion**

The remaining counts in plaintiff's complaint raise the following federal claims:

> Count 2: A claim pursuant to 42 U.S.C. § 1983 for inverse condemnation of real property.
>
> Count 3: A civil RICO conspiracy claim.
>
> Count 4: A claim pursuant to 42 U.S.C. § 1983 against the individual defendants for violations of various constitutionally protected rights.
>
> Count 5: A claim pursuant to 42 U.S.C. § 1983 against the City for violations of various constitutionally protected rights.

I.   Count 2 - Unconstitutional Taking of Real Property.

In his papers, plaintiff appears to concede that his § 1983 claim relating to the alleged unconstitutional taking of the real property located at 125 Charles Street fails for the same reasons his related claim for the allegedly wrongful taking of his personalty failed. See Plaintiff's combined objection (document no. 85) at 3. See generally Order dated January 4, 1999. Defendants are also entitled to judgment as a matter of law with regard to that claim because the record before the court demonstrates that a state court determined that the City, and not plaintiff, actually held legal title to the subject property. Accordingly, plaintiff had no cognizable claim under § 1983 relating to the destruction of the city's buildings and fixtures located on that property. See Amezquita v. Hernandez-Colon, 518 F.2d 8 (1st Cir. 1975) (holding that group of squatters who occupied government-owned land had no viable section 1983 claims

5

against the government when the structures in which they were living were demolished by state actors).

## II.   Count 3 - RICO Conspiracy.

In order to prevail on his civil RICO conspiracy claim, plaintiff must allege and prove that defendants conspired to commit a "pattern of racketeering activity."  18 U.S.C. § 1962(a) and (d).  A "racketeering activity" includes any act or threat involving murder, kidnaping, arson, robbery, bribery, extortion, gambling, or drug dealing.  18 U.S.C. § 1961(1).

Here, plaintiff alleges that defendants engaged in a pattern of racketeering activity by attempting to divest him of his interest in the real and personal property located at 125 Charles Street through extortion.  The term "extortion" means "the obtaining of property from another, <u>with his consent</u>, induced by wrongful use of actual or threatened force, violence, fear, or under color of official right."  18 U.S.C. § 1951(b)(2) (emphasis supplied).  Plaintiff says that defendants committed (or conspired to commit) "extortion" by:

> fostering a general climate of intense intimidation wherein Mr. Blaisdell was arrested or threatened to be arrested (and thereby having his liberty deprived) when setting foot upon his own property to reclaim his own personalty, and, furthermore, that he would continue to be so arrested unless he signed the above described "Agreement", which signing would have caused Blaisdell to give up certain above described property rights, including the right to bring this very action.

6

Amended complaint, at para. 76.[2]

Plaintiff's civil RICO conspiracy claim fails for several reasons. First, plaintiff has failed to specifically identify two or more predicate crimes in which each of the individual defendants is alleged to have engaged. See, e.g., Miranda v. Ponce Federal Bank, 948 F.2d 41, 45 (1st Cir. 1991) ("[I]t is settled beyond peradventure that civil liability under 18 U.S.C. § 1962(c) requires a named defendant to have participated in the commission of two or more predicate crimes within the compendium described in 18 U.S.C. § 1961(1)."). While plaintiff's amended complaint generally alleges that the individual defendants participated in one or more criminal schemes designed to divest him of real and personal property, it fails to specify which particular defendant(s) engaged in which specific conduct. See amended complaint at paras. 74-76. Plaintiff's objection does little to cure or address those deficiencies. Instead, it focuses almost exclusively upon plaintiff's assertion that defendants sought to make him relinquish certain real and intangible rights by "unlawfully" insisting that he sign a waiver

---

[2] Parenthetically, the court notes that plaintiff seems to ascribe an overly broad interpretation to the waiver that the City proposed he sign. Contrary to plaintiff's suggestion, it does not appear that the proposed waiver would have prevented him from pursuing this civil action. It would have merely precluded him from seeking damages from the City if he had sustained any injuries while salvaging personalty located at the Charles Street property (to which the City held title). See Proposed Agreement Regarding Removal of Personal Property at 3-4 (Exhibit L to defendants' memorandum).

of liability.  As noted above, however, plaintiff's interpretation of that waiver is overly broad and unsupported by the document's plain and unambiguous language.  At a minimum, plaintiff has failed to demonstrate that defendants' insistence that he execute some sort of waiver or release before he entered the condemned property was either unreasonable or unlawful; he has certainly failed to support his claim that it amounted to actual or attempted "extortion."

In light of the foregoing, here, as in Ponce Federal Bank, "the conspiracy alleged is perfunctory.  It fails to provide any specifics as to the details of the alleged conspiracy or the predicate acts committed in the pursuit thereof.  Like RICO claims generally, a RICO conspiracy claim that is alleged in wholly conclusory terms will not withstand a motion to dismiss." Id., at 48.  See also Ahmed v. Rosenblatt, 118 F.3d 886, 888-89 (1st Cir. 1997) (discussing the essential elements of a viable civil RICO claim and the specific pleading requirements applicable to such a claim), cert. denied, 118 S.Ct. 1165 (1998); Camelio v. American Federation, 137 F.3d 666, 670-71 (1st Cir. 1998) (discussing the statutory definition of "extortion" and concluding that, because the plaintiff claimed his injuries resulted exclusively from defendants' unilateral actions, plaintiff's civil RICO claim must fail because defendants did not extort property (i.e., take it from him with his consent through the use or threat to use force).

8

Finally, the record fails to support plaintiff's conclusory allegation that any conspiracy among the defendants existed.

III. Count 4 - Section 1983 Claims Against Individual Defendants.

Initially, the court notes that plaintiff has failed to specifically identify the conduct in which each individual defendant is alleged to have engaged that gives rise to his section 1983 claims. But even if those claims were adequately pled, nearly all of them would be barred by the applicable statute of limitations (e.g., claims stemming from the February 25, 1993 demolition of the property; the February 25 seizure of Blaisdell's pickup truck; the February 27 order "barring Blaisdell from further entering the property;" Blaisdell's arrest on March 22 and his subsequent arrest on March 26; the March 28 "complete demolition of the said Charles Street dwelling house and garage;" etc.). See Amended complaint, at paras. 27-32. See also Order dated August 28, 1998 (holding that the statute of limitations bars plaintiff from recovering from any events that occurred prior to April 5, 1993).

Nevertheless, in his memorandum opposing summary judgment (document no. 85), plaintiff asserts that two section 1983 claims against the individual defendants remain viable: (1) unreasonable search and seizure stemming from his arrests when he went onto the property after the fire; (2) denial of procedural due process prior to the demolition of the structures located at the

9

property.  See Plaintiff's memorandum at 17-18.  As noted above, plaintiff's claims relating to his arrests are barred.

Moreover, even if those claims are not time-barred, they fail on the merits.[3]  The record demonstrates that each time he was arrested, Blaisdell was trespassing on City property, in violation of a police line and a lawful and valid order issued by the Fire Chief restricting access to the property (because of the public safety hazard it posed).  The arrests were, therefore, supported by probable cause.  See generally N.H. Rev. Stat. Ann. 635:2 (defining the elements of criminal trespass).

Defendants are also entitled to judgment as a matter of law as to the plaintiff's claims regarding alleged denials of procedural due process.  First, the record suggests that plaintiff is barred by the doctrine of res judicata from relitigating that claim, which the state superior court rejected on the merits.  See Exhibit BB, CC, and DD (attached to document no. 77).  Moreover, the record reveals that plaintiff was given notice of the City's intent to demolish the structures located on the property and an opportunity to be heard on that issue.  See Exhibits O, P, R, and S.  Strafford County Superior Court Judge

---

[3]  Although his complaint alleges that he was arrested on March 22 and 26, 1993 (i.e., outside of the pertinent limitations period), see amended complaint at paras. 30-31, the record suggests that he may have been arrested on March 26, April 3, and April 9, 1993.  If that were the case, the arrest on April 9 would fall within the limitations period.

Robert Dickson held an evidentiary hearing on plaintiff's petition for restraining order and injunctive relief. Following that hearing, the state court denied plaintiff's petition and granted all of the City's requests for findings of fact and rulings of law. See Exhibit S. Thus, plaintiff's claim that he was denied due process is without merit.

Finally, even assuming that plaintiff could show that defendants' alleged conduct violated his constitutionally protected rights (which he has not), defendants would still be entitled to the protections afforded by qualified immunity.[4] Plaintiff has failed to demonstrate that the individually named defendants knew or should have known that the conduct in which they are alleged to have engaged (to the extent plaintiff's allegations are supported by the record or reasonable inferences that might be drawn from the record) would likely violate plaintiff's clearly established constitutional rights. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("government officials performing discretionary functions, generally are

---

[4] The Supreme Court has directed that when a qualified immunity defense is asserted in a constitutional tort case, courts should first determine whether the plaintiff's constitutional rights were, in fact, violated. Typically, the court should turn to the issue of qualified immunity only if it first concludes that a constitutional right was violated. See County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998); Siegert v. Gilley, 500 U.S. 226, 232 (1991). So, having concluded that defendants did not violate plaintiff's constitutional rights, the court might reasonably forego any discussion of defendants' entitlement to qualified immunity. Nevertheless, a brief discussion of qualified immunity seems appropriate.

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); Anderson v. Creighton, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken."); Brady v. Dill, 187 F.3d 104, 116 (1st Cir. 1999) ("the law must have defined the right in a quite specific manner, and . . . the announcement of the rule establishing the right must have been unambiguous and widespread, such that the unlawfulness of particular conduct will be apparent ex ante to reasonable public officials.") (citations omitted); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1992) ("To be 'clearly established,' the 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'") (quoting Anderson, 483 U.S. at 640)).

In short, nothing in the record suggests that defendants knew or reasonbly should have known that they were likely violating plaintiff's clearly established constitutional rights when they: (1) arrested plaintiff for crossing a police line, defying a valid order of the Fire Chief, and trespassing on City property; and/or (2) demolished the condemned Charles Street

12

structures (after the state court had denied plaintiff's petition for a restraining order).

IV.  Count V - Section 1983 Claims Against the City.

In count 5 of his amended complaint, plaintiff alleges that the "City of Rochester had an official and/or de facto unconstitutional custom, practice, and/or policy of depriving Blaisdell of his above stated constitutional rights."  Amended complaint, para. 97.  The record fails to support that claim.

Plaintiff's argument in response to defendants' motion for summary judgment as to count 5 is, in its entirety, as follows:

> The individual Defendants were policy makers of the City of Rochester.  As seen in the material facts, the individual Defendants, namely, the City Solicitor, a Town Counselor, the City Manager, and the City Police Chief, all participated in the Blaisdell affair, from the time of the fire until the final demolition was finished, and they controlled the City's behavior relative to Blaisdell.  They all knew or at least should have known that Blaisdell was being prevented by threat of arrest from going upon 125 Charles to retrieve his personal property.  These City Policy makers also had the ability to prevent the rank theft of Blaisdell's personalty on the property which was occurring, which theft constitutes an unreasonable seizure of Blaisdell's property.

Plaintiff's memorandum at 17-18.  More is necessary to establish that a municipal custom or policy was the moving force behind the alleged deprivation of a constitutional right.  See generally Board of County Com'rs of Bryan County v. Brown, 520 U.S. 397 (1997); Monell v. Department of Social Services, 436 U.S. 658

13

(1978); McCabe v. Life-Line Ambulance Service, Inc., 77 F.3d 540 (1st Cir. 1996). Absent some evidence on that point, defendants are entitled to judgment as a matter of law.

## Conclusion

For the foregoing reasons, and for the reasons set forth in the legal memoranda submitted by defendants (attached to documents no. 76, 77, and 87), defendants' motions for summary judgment as to all of plaintiff's remaining federal claims (documents no. 76 and 77) are granted. Having disposed of all of plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over his state law claims, which are dismissed without prejudice to pursuing them in state court. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 19, 1999

cc:  Matthew Cobb, Esq.
     Donald E. Gardner, Esq.
     James Corpening

14