**UNITED STATES of America, Appellee,**

v.

**Robert GALE, Appellant.**

**No. 97–3042.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 22, 1998.

Decided March 10, 1998.

Dennis F. Nee, Bethesda, MD, argued the cause for appellant.

Rachel Adelman Pierson, Assistant United States Attorney, Washington, DC, argued the cause for appellee. Mary Lou Leary, United States Attorney, Washington, DC, at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, Washington, DC, G. Michael Lennon and William M. Sullivan, Assistant United States Attorneys, Washington, DC, were on brief.

Before: WILLIAMS, HENDERSON and GARLAND, Circuit Judges.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellant Robert Gale challenges his drug trafficking convictions on the ground that evidence admitted at trial was obtained through the unlawful search of an apartment he used to prepare drugs for distribution. He also appeals his sentence on the ground that it was based in part on drugs not properly attributable to him. We reject both challenges, concluding that Gale lacks standing to contest the apartment search and that the court's drug quantity findings are not clearly erroneous.

## I.

On October 18, 1995 Johnny Moncrief received a report of water dripping into unit 103 of the apartment building he managed on Rhode Island Avenue, N.E. in Washington, D.C. Attempting to discover the source of the drip, Moncrief visited unit 203—the apartment immediately above unit 103—which was leased to a "Mr. Creek." When no one responded to his knocks and he was unable to open the door lock, Moncrief obtained approval from his supervisor to enter the apartment forcibly and called the Washington Metropolitan Police Department for assistance with the entry.

Two uniformed officers, Tammy Lane and Michael Rorie, responded to Moncrief's call and accompanied him to unit 203. Lane knocked on the door twice but received no response. Moncrief had begun to pry the door open when he heard a voice from within call out: "I'm here. I was asleep. That's

the reason I didn't open the door, let you in." Appellant's Appendix (App.) 50. The caller, who turned out to be Gale, was unable to open the door from inside and Moncrief finished breaking the lock. He then entered the apartment and went to the kitchen to check for a water leak. Lane remained in the living room and spoke with Gale. When Moncrief returned he overheard Gale identify himself to Lane as "Mr. Creek." Moncrief and the officers then left the apartment.

Once outside the apartment Lane asked Moncrief if the person inside was Mr. Creek and was told: "That's not Mr. Creek. He's not the tenant that we rented the apartment to." *Id.* 53. Lane then returned to the apartment and, standing in the doorway, asked Gale for identification. She ran a check for outstanding warrants in Gale's name but found none. While still in the doorway, Lane saw another man, John C. Grier, emerge from the kitchen with a dog. Gale explained that Grier had been holding the dog in the kitchen because dogs were not allowed in the apartment. Lane then walked into the kitchen where she noticed a box on the counter. When she looked inside she saw what she correctly surmised to be cocaine. She arrested both Gale and Grier and searched their persons. She discovered 118 ziplock bags of a mixture of cocaine and heroin in Grier's pants, a small amount of cocaine base in his pocket and $607 in Gale's pocket. Search warrants were obtained for both unit 203 and unit 614, which was the residence of Gale's uncle. When the two apartments were searched police discovered various items used for drug packaging, a bag of marihuana, $2,146 in cash, a semiautomatic pistol and ammunition.

In a superseding indictment filed January 4, 1996 Gale and Grier were charged jointly with (1) conspiracy to possess with intent to distribute cocaine, heroin and cocaine base, (2) possession with intent to distribute cocaine base, (3) possession with intent to distribute heroin, (4) possession with intent to distribute cocaine and (5) possession of marihuana. In addition, Gale was charged with felon possession of a firearm and felon possession of ammunition.

Gale and Grier each moved to suppress the physical evidence recovered from the two apartments on the ground that Lane's initial warrantless search of the kitchen in unit 203 violated their rights under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizure. On April 2, 1996, after an evidentiary hearing, the district judge denied both defendants' motions, concluding that neither one had sufficient interest in unit 203 to confer standing to challenge the search. After a second evidentiary hearing on May 15, the district judge again denied Gale's motion to suppress on the same ground. A short time later the case was transferred to a different district judge for trial.

The second judge severed the felon-in-possession counts and granted a motion for acquittal on the conspiracy count. Gale and Grier were then tried jointly on the four remaining drug counts in August 1996. The jury convicted Grier of possessing cocaine and heroin with intent to distribute but hung on the counts against Gale.

Gale was tried again, alone, on the four drug counts in November 1996. During the trial the district judge denied Gale's renewed motion to suppress. "Assuming standing," the judge concluded that Lane's search of the apartment was lawful. App. 190–91. The jury convicted Gale of possession of marihuana and possession of heroin with intent to distribute.

On April 3, 1997 the district judge sentenced Gale to concurrent terms of 121 months' imprisonment for possessing heroin with intent to distribute and 12 months for possessing marihuana. In calculating Gale's base offense level, the judge held him responsible for all of the drugs seized, including those found in Grier's pants. Gale appeals both the denials of his motion to suppress and the length of his sentence. We address each challenge separately.

## II.

Gale first argues that all of the evidence seized as a consequence of Lane's initial search of unit 203 should be suppressed because the search violated the

Fourth Amendment's guarantee against unreasonable search and seizure. "The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez,* 497 U.S. 177, 180, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990) (citing *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948)). Further, a criminal defendant "is assured by the trial right of the exclusionary rule, where it applies, ... that no evidence seized in violation of the Fourth Amendment will be introduced at his trial unless he consents." *Id.* at 183, 110 S.Ct. at 2799. Nevertheless, "[t]he 'capacity to claim the protection of the Fourth Amendment depends .... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.'" *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978) (quoting *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967)). "A subjective expectation of privacy is legitimate if it is 'one that society is prepared to recognize as "reasonable,"'" *Minnesota v. Olson,* 495 U.S. 91, 95–96, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990) (quoting *Rakas,* 439 U.S. at 143–144 n. 12, 99 S.Ct. at 430 n. 12). Gale relies heavily on *Olson* in which the United States Supreme Court held that "status as an overnight guest is alone enough to show ... an expectation of privacy in the home that society is prepared to recognize as reasonable." *Id.* at 96, 110 S.Ct. at 1685. We conclude that the district court properly found that Gale was not an overnight guest and correctly concluded that he had no reasonable expectation of privacy in unit 203.

Gale did not claim that he rented the apartment or that he lived there. To the contrary, he gave a different "residence address ... to the court authorities when he was arrested," App. 148, and "items indicating he has residence elsewhere ... were seized in that apartment," App. 150. Gale did claim that he was an "overnight guest" of the lawful tenant, Creek, who made no appearance (and was not otherwise identified) during the proceedings. After holding two hearings, the district court concluded that it did "not find credible" Gale's testimony that Creek "had given him permission to stay" in the apartment. App. 148. Because that finding of fact is not clearly erroneous, we must uphold it. *See United States v. Garrett,* 959 F.2d 1005, 1007 (D.C.Cir.1992).

The court explained that its credibility determination was based in part on "judging [Gale's] credibility when he testified that he had been there 29 nights out of [the] 30 nights" before his arrest. App. 148. The court rejected Gale's claim in part because there was "no substantial amount of clothing associated with him that's been shown [and] there was almost no furniture in the apartment ... there's no evidence of any bureau or anything else." App. 144. The kitchen contained primarily drug paraphernalia. See App. 127.

Further support for the conclusion that Gale was not Creek's "overnight guest" derives from the court's finding that Creek himself "quite evidently [was] not living there in 203." App. 146. As the court noted, Moncrief had seen Creek around the building only three times in two years—and not at all in the few months before the search—and the rent on the apartment was in arrears. *See* App. 146, 148. Although the apartment was locked when Moncrief and the officers came to investigate the leak, and Gale may have had the key, Moncrief testified that it was not the key that had been given to the lawful tenant. Unknown to the building's managers, the lock had been changed, which was why Moncrief had to break it to enter the apartment. *See* 11/14/96 P.M. Trial Tr. 9 1–92. All of this supports the court's surmise that Creek had abandoned the apartment, *see* App. 146, and that Gale (whose uncle lived elsewhere in the building) had occupied the premises "solely for the business of packing for distribution narcotics." App. 149.

Under these findings, to the extent that Gale used or resided in the apartment, he did so without permission of its tenant. Without legal authority to be there, Gale lacked the "legitimate expectation of privacy" in the premises required to challenge the search.

*See Zimmerman v. Bishop Estate,* 25 F.3d 784 (9th Cir.) (squatters and their guest lacked "objectively reasonable expectation of privacy" in another's property and consequently were precluded from claiming search of shack on property violated Fourth Amendment), *cert. denied,* 513 U.S. 1043, 115 S.Ct. 637, 130 L.Ed.2d 543 (1994); *United States v. Ruckman,* 806 F.2d 1471, 1472–74 (10th Cir. 1986) (squatter lacked privacy expectation to challenge search of cave in which he resided on federal land in Utah); *Amezquita v. Hernandez–Colon,* 518 F.2d 8, 11–12 (1st Cir. 1975) (squatters on farmland owned by Commonwealth of Puerto Rico lacked Fourth Amendment reasonable expectation of privacy to support injunction protecting their homes), *cert. denied,* 424 U.S. 916, 96 S.Ct. 1117, 47 L.Ed.2d 321 (1976).

In urging that the evidence below established his standing as a matter of law, Gale relies on evidence not considered by the judge in the two pre-trial denials, notably trial testimony by Moncrief that other people had "told" him Gale personally paid the rent for unit 203 "on several occasions" and that Moncrief "saw" him do so once "in the early months of '95." App. 165–66; *see* also *id.* 172. Moncrief's testimony on this point was itself weak because it was contradicted by his own earlier testimony, see 11/14/96 PM Trial Tr. 106, as well as by Gale's statement that he had never paid rent, App. 62. Further, even if the district court were to credit Moncrief's second position, Gale's payment of rent in early 1995 would do almost nothing to undermine the district court's conclusions that by October 1995 Creek had most probably abandoned the apartment and that Creek (who, according to Moncrief, was not involved in Gale's rent payment) had not given Gale permission to live there. Nor, in our view, would testimony of an isolated rent payment

seven months in the past give Gale any independent ground on which to claim an October 1995 privacy expectation. We see no reason to believe that this evidence, or any of the other evidence that emerged at trial, would have led the district court to conclude that Gale had a reasonable expectation of privacy in apartment 203 at the time of the search.

### III.

Next Gale challenges his sentence on the ground that the district judge erroneously attributed to Gale drugs seized from Grier's person. The district judge included the drugs taken from Grier in Gale's relevant conduct calculation after finding Gale "responsible for possession of all the drugs in that apartment" because he and Grier were "aider[s] and abetter[s]" of each other, noting Grier's testimony at the first trial that "the drugs were in the kitchen initially and that he stuck the drugs into his crotch in an effort to hide the[m] from the police." App. 227–29. Because those findings are not clearly erroneous, we affirm the sentence. *See United States v. Dingle,* 114 F.3d 307, 313 (D.C.Cir.1997) (upholding attribution to aider/abetter of virtually all drugs found in apartment where finding that principal and aider/abetter jointly possessed them was not clearly erroneous).*

For the preceding reasons, the judgment of the district court is

*Affirmed.*

---

* Gale argues that the judge violated Federal Rule of Criminal Procedure 32 by adopting the pre-sentencing report which contained inaccurate information on attributability. Any inaccuracy in the report, however, was cured by the cited factual findings at sentencing. *See United States v. Badru,* 97 F.3d 1471, 1476 (D.C.Cir.1996) (affirming sentence where "the district court made

specific findings as to appellants' conduct upon reviewing defense counsels' objections to the attributions in the presentence report and the government's evidence") (citing *United States v. Graham,* 83 F.3d 1466, 1479–80 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, ——, 117 S.Ct. 1327, 1700, 137 L.Ed.2d 488, 825 (1997)).