<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 97-2417

                   UNITED STATES OF AMERICA,

                           Appellee,

                               v.

                         ERICK TORRES,

                     Defendant, Appellant.

                        _______________

No. 97-2416

                   UNITED STATES OF AMERICA,

                           Appellee,

                               v.

                        MARK RODRIGUEZ,

                     Defendant, Appellant.

         APPEALS FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

         [Hon. Michael  A. Ponsor, U.S. District Judge]

                             Before

                     Selya, Circuit Judge,
                                
         Aldrich and Campbell, Senior Circuit Judges.
                                
                                

    Martin I. Flax, by appointment of the court, for appellant
Torres.
    David P. Shapiro, by appointment of the court, for appellant
Rodriguez.
    Louis M. Fischer, Attorney, Appellate Section, Criminal
Division, Department of Justice, with whom Donald K. Stern, United
States Attorney, and Andrew Levchuk and Ariane D. Vuono, Assistant
United States Attorneys, were on brief, for the United States.

December 3, 1998

                                
                                

 SELYA, Circuit Judge.  A jury convicted defendants-
appellants Erick Torres and Mark Rodriguez of a potpourri of
offenses, including conspiracy to commit violent crimes to maintain
or increase their positions in a racketeering enterprise; attempted
murder, maiming, and assault with a dangerous weapon for that
purpose; carrying firearms during and in relation to a violent
crime; and possession of an unregistered firearm.  See 18 U.S.C.  
1959(a), 924(c); 26 U.S.C.  5861(d).  In addition, the jury
convicted Torres of being a felon in possession of a firearm.  See18 U.S.C.  922(g)(1).  Following the imposition of lengthy prison
sentences, both defendants appealed.
 We recount the facts in the light most congenial to the
verdict, consistent with record support.  See United States v.
Houlihan, 92 F.3d 1271, 1277 (1st Cir. 1996).  Given the strength
of the government's case, a sketch suffices.
 A drive-by shooting occurred in Springfield,
Massachusetts, on February 21, 1995.  The shooters wounded two
juveniles (Stephenson Bellevue and Jesus Gambora).  The victims'
companion, William Scott, witnessed the incident but escaped
unscathed.  The police were alerted in a timely fashion and spotted
the shooters' car in nearby Holyoke.  They trailed the occupants to
an apartment building.  Once there, attention focused on a
particular apartment and the authorities sought access.  The
tenant, Rafael Rodriguez (father of Mark Rodriguez), allowed the
officers to enter the premises and conduct a consensual search.
 The principal searcher, state trooper John Spellacy,
found Mark Rodriguez in his bed, feigning sleep.  Spellacy then
discovered Torres and a third suspect, Francisco Hernndez, hiding
behind a dresser in the same bedroom.  The authorities took the
three youths into custody.  At that point, Rafael Rodriguez
withdrew his consent.  The officers honored his wish, secured the
premises and proceeded to obtain a warrant.  The ensuing search
unearthed sundry firearms, a receipt for the purchase of firearms,
Mark Rodriguez's firearms identification card, gang literature, and
other incriminating material.
 Investigation revealed that the appellants held positions
as "warlords" in a gang known as "La Familia."  The drive-by
shootings occurred after a key La Familia member was attacked and
the gang vowed to exact revenge.  The prosecution's theory,
apparently credited by the jury, was that the appellants shot two
innocent teenagers in the mistaken belief that they were members of
a rival gang.
 These appeals present no close questions.  The appellants
try; they raise a multitude of arguments, but all of them are
bootless.  We discuss briefly six prominently featured points.  The
appellants' other plaints require no comment, and we reject them
out of hand.
 1.  Sufficiency of the Evidence.  Torres contests the
sufficiency of the evidence on both the weapons offenses and the
RICO-related charges.  Faced with such a challenge, we assay the
evidence in the light most amiable to the government, draw all
reasonable inferences in its favor, and determine whether, so
viewed, a rational factfinder could conclude, beyond a reasonable
doubt, that the government proved the essential elements of each
offense.  See United States v. Hernandez, 146 F.3d 30, 32 (1st Cir.
1998); United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995).  
Measured against this benchmark,  Torres' insufficiency challenge
is patently frivolous insofar as it is addressed to the weapons
offenses.  See, e.g., Muscarello v. United States, 118 S. Ct. 1911,
1918 (1998); Bailey v. United States, 516 U.S. 137, 148 (1995);
United States v. Valle, 72 F.3d 210, 217 (1st Cir. 1995).
 As to the RICO-related charges, the challenge is only
marginally more robust.  To convict on the substantive RICO
offenses under the instructions presented to the jury, the
government had to prove that La Familia qualified as an enterprise
engaged in racketeering activity; that Torres held a position in
it; and that he committed (or aided and abetted the commission of)
the violent crimes described in the indictment in order to maintain
or increase his position in the enterprise.  See United States v.
Fiel, 35 F.3d 997, 1003 (4th Cir. 1994); United States v. Vasquez-
Velasco, 15 F.3d 833, 842 (9th Cir. 1994); see also 18 U.S.C.  
1959(a).  Torres' insufficiency challenge targets the last two
elements, namely, whether he committed the crimes of violence and
whether he did so to further his standing in the gang.
 Torres' protests are unavailing.  As to whether he
participated in the shootings, the testimony of Wanda Rodriguez, a
government witness, is little less than damning.  Apparently
recognizing this problem, Torres argues that her testimony was
incredible.  As a general rule, however, credibility determinations
are for the jury, not for an appellate court.  See United States v.
O'Brien, 14 F.3d 703, 707 (1st Cir. 1994).  That rule indubitably
applies to claims of evidentiary insufficiency.  See United Statesv. Woodward, 149 F.3d 46, 56 (1st Cir. 1998) (holding that, on such
a challenge, an appellate court will not weigh the credibility of
witnesses).  Its application here frustrates Torres' effort to
undermine the jury verdict.  Nor does Wanda Rodriguez's testimony
stand alone.  It was corroborated by, inter alia, Mark Rodriguez's
admission (in Torres' presence) to a fellow gang member, compelling
ballistics evidence, and abundant circumstantial proof.
 As to the final element of the offense, Torres' argument
founders on our recent decision in United States v. Tse, 135 F.3d
200 (1st Cir. 1998), in which we held that the government can
satisfy this element of a RICO conspiracy charge by showing merely
that the defendant committed the crime because it was expected of
him by virtue of his membership in the enterprise.  See id. at 206.  
The proof at trial comfortably cleared this hurdle.
 2.  The Pinkerton Instruction.  Torres claims that the
trial court erred in instructing the jury on the doctrine limned in
Pinkerton v. United States, 328 U.S. 640 (1946).  In general, a
Pinkerton instruction exposes a coconspirator to criminal liability
for substantive crimes committed in the course of the conspiracy,
regardless of whether he or some other coconspirator actually
perpetrated the crimes.  See United States v. Sanchez, 917 F.2d
607, 612 (1st Cir. 1990).  A Pinkerton instruction is appropriate
if the evidence is sufficient to prove the charged conspiracy and
to link the substantive offenses to it.  See Tse, 135 F.3d at 207.  
The evidence just summarized meets this benchmark.  Hence, it
defeats Torres' claim that the trial court lacked an evidentiary
basis for giving a Pinkerton instruction.
 3.  The Search.  The appellants argue in unison that the
district court should have suppressed the inculpatory evidence
seized from Rafael Rodriguez's apartment.  Despite their united
front, we treat their arguments separately.
 As to Torres, this claim is easily dispatched.  Torres
was nothing more than a casual visitor in the apartment, and, as
such, had no reasonable expectation of privacy there.  See Unitedv. Gale, 136 F.3d 192, 195 (D.C. Cir. 1998); Terry v. Martin, 120
F.3d 661, 633 (7th Cir. 1997); United States v. Maddox, 944 F.2d
1223, 1234 (6th Cir. 1991); United States v. Grandstaff, 813 F.2d
1353, 1357 (9th Cir. 1987).  Since Fourth Amendment rights are
personal to each defendant and may not be asserted vicariously, seeUnited States v. Padilla, 508 U.S. 77, 81-82 (1993); Rakas v.
Illinois, 439 U.S. 128, 130 n.1, 133-34 (1978), Torres' failure to
demonstrate his own legitimate expectation of privacy in the
premises renders the exclusionary rule unavailable to him.
    Mark Rodriguez's claim rests on different footing.  
Because he resided in the apartment, the search implicated his
Fourth Amendment rights.  Be that as it may, Rodriguez is
endeavoring to change horses in midstream.  In the district court,
he argued unsuccessfully that the officers' coercive manner, in
combination with his father's second-grade education, limited
English language skills, and inebriated state, rendered the consent
involuntary.  In this venue, he scraps this theorem and maintains
instead that a parent does not have authority to consent to a
search of an adult child's bedroom within the family's domicile.
    We need not consider this asseveration on the merits.  A
litigant cannot jump from theory to theory like a bee buzzing from
flower to flower.  To the precise contrary, when a party fails to
raise a theory at the district court level, that theory is
generally regarded as forfeited and cannot be advanced on appeal.  
See United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992) ("It is
a bedrock rule that when a party has not presented an argument to
the district court, she may not unveil it in the court of
appeals.").  So it is here.
    In this case, moreover, the forfeiture is double-
barreled.  Fed. R. Crim. P. 12(b)(3) requires a defendant to file
suppression motions prior to trial, and Fed. R. Crim. P. 12(f)
declares that failure to do so constitutes a waiver.  This waiver
provision applies not only when a defendant has failed altogether
to make a suppression motion but also when, having made one, he has
neglected to include the particular ground that he later seeks to
argue.  See United States v. Meraz-Peru, 24 F.3d 1197, 1198 (10th
Cir. 1994); United States v. Restrepo-Rua, 815 F.2d 1327, 1329 (9th
Cir. 1987).  Because these twin forfeitures cannot be overlooked,
Mark Rodriguez's challenge to the search cannot succeed.
    4.  Ineffective Assistance of Counsel.  In a related
vein, Mark Rodriguez urges in his reply brief that these
forfeitures supply strong evidence of his trial counsel's
ineptitude.  On this basis, he asserts that his Sixth Amendment
right to effective counsel has been compromised.  See Strickland v.
Washington, 466 U.S. 668, 687 (1994); Scarpa v. Dubois, 38 F.3d 1,
8 (1st Cir. 1994).  This argument, too, is procedurally defaulted.
    For one thing, issues raised for the first time in an
appellant's reply brief are generally deemed waived.  See United
States v. Brennan, 994 F.2d 918, 922 n.7 (1st Cir. 1993) (remarking
the "well settled" rule that legal arguments made for the first
time in an appellant's reply brief are tardy and will not
ordinarily be considered); Sandstrom v. ChemLawn Corp., 904 F.2d
83, 86 (1st Cir. 1990) (similar).  We see no reason to relax this
salutary rule in the circumstances at hand.
    For another thing, ineffective assistance claims, by and
large, may not be raised on direct appeal if they have not
seasonably been advanced in the district court.  See United Statesv. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993).  While this praxis
admits of an occasional exception, see, e.g., United States v.
Natanel, 938 F.2d 302, 309 (1st Cir. 1991), the case at bar entails
no exceptional circumstances, and, thus, falls comfortably within
the sweep of the general rule.
    5.  Variance.  The appellants asseverate that a material
variance existed between certain charges lodged in the indictment
and the government's proof at trial.  Specifically, they note that
the indictment named Bellevue and Scott as victims, but the
evidence showed that Bellevue and Gambora (not Scott) were wounded.  
"We afford plenary review to the question of whether an asserted
variance requires retrial."  United States v. Arcadipane, 41 F.3d
1, 6 (1st Cir. 1994).
    A variance occurs when the facts at trial diverge from
those alleged in the indictment.  See United States v. Marrero-
Ortiz, ___ F.3d ___, ___ (1st Cir. 1998) [No. 96-2187, slip op. at
5].  However, not every variance demands redress.  See id.  A
variance justifies relief only if the "disparity is material and
affects [the] defendant's substantial rights."  Id.; see alsoUnited States v. Tormos-Vega, 959 F.2d 1103, 1115 (1st Cir. 1992).
    Under this standard, the instant discrepancy between the
indictment and the proof does not warrant vacation of the judgment.  
Although the indictment identified Scott, rather than Gambora, as
the second shooting victim, that bevue in no way affected the
defendants' foreknowledge of the charges lodged against them or
their ability to prepare a defense.  Consequently, the variance did
not impair the defendants' substantial rights.
    6.  The Mistrial Motion.  During the trial, Jesus Gambora
testified that he had previously identified Torres in a photo
spread.  This testimony was erroneous.  Torres promptly objected
and moved for a mistrial.  The district court denied the motion,
but struck the comment and gave an immediate curative instruction.  
The appellants now argue that the lower court should have declared
a mistrial.  We think not.
    We review a district court's refusal to declare a
mistrial for manifest abuse of discretion and will uphold the
court's ruling unless the movant demonstrates a clear showing of
prejudice.  See United States v. Rullan-Rivera, 60 F.3d 16, 18 (1st
Cir. 1995); United States v. Sepulveda, 15 F.3d 1161, 1184 (1st
Cir. 1993).  Where, as here, a curative instruction is promptly
given, a mistrial is warranted only in rare circumstances implying
extreme prejudice.  See United States v. Pierro, 32 F.3d 611, 617
(1st Cir. 1994).
    In this instance, several factors point to upholding the
district court's ukase.  First, Torres does not suggest any way in
which the curative instruction could have been improved, and he did
not contemporaneously object to its content.  Second, in view of
the trial testimony, the witness's misstatement was not
particularly consequential.  Jurors are presumed to follow the
trial judge's instructions, see Sepulveda, 15 F.3d at 1185, and
that presumption has not been rebutted here.
    We need go no further.  Having reviewed the record with
care, we are fully satisfied that the defendants were fairly tried
and justly convicted.

Affirmed.

</body>

</html>